STATE, FOR USE OF D. A. CARDIN, *v.* THOMAS MCCLELLAN
*et al.*

'(*Knoxville*.   September Term, 1904.)'

1. **COUNTY REGISTER.** Liabilty on bond for errors in registration.

A county register and the sureties on his official bond are liable
for damages resulting from his failure to register correctly a
deed of conveyance of land, although his negligence is not will-
ful, nor so gross as to imply willfulness, for innocent mistake
or inadvertence affords no excuse.   (*Post, pp.* 617-623.)

Code cited and construed:   Secs. 558, 559, 560, 562, 566, 567, 570,
3748-3752, 4494 (S.); secs. 520, 521, 522, 524, 528, 529, 532, 2886-
2890, 3494 (M. & V.); secs. 446, 447, 448, 450, 453, 454, 456, 2071-
2075, 2797 (T. & S. and 1858).

Cases cited and distinguished:   McTeer v. Lebow, 85 Tenn., 121;
Maxwell v. Stuart, 99 Tenn., 409.

Cases cited and approved:   Bell v. Josselyn, 3 Gray, 309; Olm-
sted v. Dennis, 77 N. Y., 378; Clark v. Miller, 54 N. Y.. 528;
Keith v. Howard, 24 Pickering, 292; Amy v. Supervisors, 11
Wall., 136.

2. **SAME.** Same.  Cause of action accrues and statutes of limita-
tions begin to run. when the damages are sustained in con-
sequence of failure or mistake in registration.

A cause of action against a county register and the sureties on
his official bond, for his failure to register correctly a convey-
ance of land, accrues not when the mistake is made, but when
the damages are sustained in consequence of such failure or
mistake and the statutes of limitations begin to run at the time
the damages are sustained.  (*Post, pp.* 619, 623-638.)

Code cited and construed:   Sec. 570 (S.); sec. 532 (M. & V.);
sec. 456 (T. & S. and 1858).

State v. McClellan.

Cases cited and approved:  Yerger v. Young, 9 Yer., 42; Tate v. Lawrence, 11 Heis., 511; Maxwell v. Stuart, 99 Tenn., 419; Wabash Co. v. Pearson, 120 Ind., 426; Hotart v. Railroad, 36 La. Ann., 450; Ludlow v. Railroad (N. Y.), 6 Lans., 128; Sterrett v. Northport, etc., Co., 30 Wash., 164, 176; Allen v. Stephens, 102 Ga., 596; Hempsted v. Cargill, 46 Minn., 118; Hartford v. Waterman, 26 Conn., 324; Butterfield v. Forrester, 11 East, 60; People, for use of Tritch, v. Cramer, 15 Colo., 155; Steele & Johnson v. Bryant, 49 Iowa, 116.

Case cited and disapproved:  Daniel v. Grizzard, 117 N. C., 105.

## FROM MONROE.

Appeal from the Chancery Court of Monroe County. —T. M. McConnell, Chancellor.

Pritchard & Sizer, for complainant.

McCroskey & Peace, Young & Young, W. Morris. Harrison, and N. M. McDonald, for defendants.

Mr. Justice Shields delivered the opinion of the Court.

This bill was brought by D. A. Cardin, in the name of the State, to recover of Thomas McClellan, former register of Monroe county and others as sureties on his official bond, damages sustained by the complainant, resulting from the failure of defendant McClellan to correctly

register a conveyance, made by Larkin Cardin to complainant, of a tract of land situated in Monroe county. The court of chancery appeals find that the complainant placed the deed in the hands of the defendant for registration March 4, 1895, paying him the legal fees for his services and that in a few days it was returned by the defendant with his certificate that it had been received for registration, noted, and registered in a certain deed book in his office, indorsed thereon, when in fact the description of the land conveyed was not correctly copied, but so inaccurately done that it did not describe any land, and the premises conveyed could not be identified from an inspection of the register's records. That court further finds that on January 25, 1899, Cowan, M'Clung & Co., creditors of Larkin Cardin by indebtedness created after the conveyance was made to complainant and supposed to be registered, obtained judgment against him, and had the land conveyed levied on and sold February 26, 1903, when complainant was compelled to buy it in, at an outlay of $627, to protect his title. This bill was filed March 19, 1903, to recover this sum and $76.48 costs incurred by complainant in litigation in which he attempted to prevent the sale of the property under the said proceedings.

The chancellor and the court of chancery appeals have granted the relief sought by him, and the case is now before us upon the appeal of the defendants. Two assignments of error are filed:

(1) That the court of appeals erred in rendering

State v. McClellan.

judgment against defendant McClellan and his sureties, because it was not shown, and the court did not find that the mistake in registering the deed of the complainant was willful, or so gross as to imply willfulness.

(2) That the complainant's right of action as against defendant's sureties was barred by the statute of limitations of six years when this suit was instituted.

We will dispose of these defenses in the order stated.

The register of deeds is elected by the people in each county, and holds his office for four years, and until his successor is qualified. Code 1858, section 446; Shannon's Code, section 558.

Before taking charge of his office he is required to make a bond in the penalty of $12,500, with sureties to be approved by the county court, conditioned for the true and faithful performance of the duties of his office. Code 1858, sections 447, 448; Shannon's Code, sections 559, 560.

For a failure to discharge any of his duties, he is civilly responsible to the party injured, and guilty of a misdemeanor, and all parties aggrieved may maintain actions upon his bond to recover damages sustained by them. Code 1858, sections 454, 456, 2797; Shannon's Code, sections 567, 570, 4494.

He is required to have an office in the county town, and there to safely keep the public records of the conveyances of lands in his county, and other instruments authorized by law to be registered, and receive, note for registration, and promptly register in the appropri-

ate records, and index, all conveyances and other instruments presented him by individuals for that purpose, upon payment of his fees for registration, and discharge such other duties as are incident to his office. All his duties, and the fees allowed therefor, are fixed and prescribed by law. Code 1858, sections 450, 453, 454; Shannon's Code, sections 562, 566, 567.

The due and proper registration of instruments authorized by law to be registered secures to the parties interested therin certain rights and priorities in the property involved, which they do not otherwise have, of the most vital and important character. Code 1858, sections 2071-2075; Shannon's Code, sections 3748-3752.

The register, it is evident from these statutes, is a public officer, whose duties are primarily due to the public, but in the faithful performance of which all those who have occasion for his official services, and resort to his office for information, have a special interest and a direct right. These duties are purely ministerial—not involving the exercise of discretion or judgment. They are personal, certain, and imperative, and capable of exact performance, and the compensation is adequate.

The liability of a public officer and his sureties for damages, the proximate result of a breach of ministerial duties of this character, is absolute. No question of willfulness or negligence is involved, and innocent mistake or inadvertence affords no excuse. This seems to be well-settled law.

State v. McClellan.

Mr. Mechem, in his book on Public Officers, says:

"It is settled that where the law imposes upon a public officer the performance of ministerial duties in which a private individual has a special and direct interest, the officer will be liable to such an individual for ˙any injury which he may proximately sustain in consequence of the failure or neglect of the officer either to perform the duty at all or to perform it properly.

"In such a case the officer is liable as well for nonfeasance as for misfeasance or malfeasance."

"Nonfeasance," says Judge Metcalfe, "is the omission of an act which a person ought to do; misfeasance is the improper doing of an act which a person might lawfully do; and malfeasance is the doing of an act which a person ought not to do at all." The rule above stated therefore includes:

(1) Nonfeasance, or neglect, or refusal, without sufficient excuse, to perform an act which it was the officer's legal duty to the individual to perform.

(2) Misfeasance or negligence, which here, as elsewhere, is a failure to use, in the performance of a duty owing to the individual, that degree of care, skill and diligence which the circumstances of the case reasonably demand.

(3) Malfeasance, or the doing, either through ignorance, inattention, or malice, of that which the officer had no legal right to do at all, as where he acts without any authority whatever, or exceeds, ignores or abuses his powers.

*Bell* v. *Josselyn,* 3 Gray, 309, 63 Am Dec., 741.

It is not necessary, to establish liability, to show either malice or willfulness in the failure or improper performance of the act. *Olmsted* v. *Dennis,* 77 N. Y., 378.

And mistake and good faith are no defense to the defaulting officer. *Clark* v. *Miller,* 54 N. Y., 528; *Keith* v. *Howard,* 24 Pick., 292; *Amy* v. *Supervisors,* 11 Wall., 136, 20 L. Ed., 101.

The cases of *Maxwell* v. *Stuart,* 99 Tenn., 409, 42 S. W., 34, and *McTeer* v. *Lebow,* 85 Tenn., 121, 2 S. W., 18, have no application to this one. The statutes invoked in both of those cases required that the wrongful act of the officer to do his duty be knowingly or willfully done, while the one under consideration contains no such qualification of the liability of the register for failure to do his duty, but is unlimited and absolute.

Moreover, the failure of the register to copy the deed of the complainant correctly cannot be said to be an innocent mistake, as failure to so cannot be accounted for upon any other hypothesis than incompetency or gross carelessness.

The very occurrence of the mistake in so simple and plain a matter is plenary evidence of negligence. The exercise of the most ordinary care would have prevented it, and comparison of the original with the record would have detected it and furnished an opportunity for its correction. The failure to promptly and correctly register deeds and other instruments, if tolerated, would

defeat the very object and purpose of our registration laws. Public policy and the rights of those directly interested in the proper registration of instruments require that registers be held to a strict and literal performance of their official duties. They and their official sureties undertake and contract that the duties of the office will be honestly, diligently and correctly performed, and when their obligation is breached, and injury follows, they are liable to the party injured.

There is no doubt, upon this record, that the defendant McClellan has been guilty of an inexcusable malfeasance in office, which was the proximate cause of complainant's loss, for which he and his sureties, other questions out of the way, must answer in damages.

The second assignment of error which is filed in behalf of the defendant sureties presents a question of more difficulty, and one that we have no case deciding. It is whether the cause of action of one who is injured by a breach of public duty by a public officer accrues and is complete when the breach or wrong is done, or when the consequential injury occurs.

The defendants say the complainant's cause of action accrued and was complete March 7, 1895, when their principal failed to correctly register the deed, and that this suit was barred, by the statute of limitation of six years in favor of sureties of public officers, March 19, 1903, when it was brought, while the complainant insists that the failure of the register to correctly register the deed was a breach of a duty which he primarily owed

to the public, and that he was not injured, and had no cause of action therefor, until his property was levied upon and sold by a creditor of his vendor, when his loss was sustained, and his right of action accrued and was complete, which was within six years next before he filed his bill, and therefore it is not barred.

This question, as we have said, has not been adjudicated in any reported case of this court; but, upon principle and authority, we think it must be determined in favor of the complainant.

It is said, under the head of "Limitations of Actions," in 19 American & English Encyclopædia of Law, 200: "As a general rule, the cause of action for a wrongful act, whether negligent or willful, or for the breach of a contract or duty, accrues immediately upon the happening of the wrongful act or breach, even though the actual damage resulting therefrom may not occur until some time afterwards. The statute therefore begins to run upon the occurrence of the act or breach complained of, and not from the time of the damage resulting therefrom. Where, however, the cause of action is based on consequential as distinguished from direct damages, and involves an act or omission which might have proved harmless, the cause of action must be taken as accruing only upon the actual occurrence of the damage, so that the statute runs only from that time."

What is here said to be the general rule is the law in this State in ordinary actions between individuals, and

State v. McClellan.

there are many respectable authorities sustaining the exception stated in the second part of the quotation.

Among others, the cases of *Wabash County* v. *Pearson,* 120 Ind., 426, 22 N. E., 134, 16 Am. St. Rep., 325; *Hotard* v. *T. & P. Ry.,* 36 La. Ann., 450; *Ludlow* v. *Hudson River R. Co.,* 6 Lans. (N. Y.), 128; *Sterrett* v. *Northport Min. & S. Co.,* 30 Wash., 164, 176, 70 Pac., 266; *Allen* v. *Stephens,* 102 Ga., 596, 29 S. E., 443; *Hempsted* v. *Cargill,* 46 Minn., 118, 48 N. W., 558; and Wood on Limitations, section 178.

But we do not rest our decision on this ground. There is another principle which applies directly to this case. It is this: Public officers are not liable for a breach of official duty to an individual unless he can show that in the public duty was involved a duty to himself as an individual, and that he has suffered a special and peculiar injury, not common to the general public. In other words, without special injury the wrong is to the public only, and punishable by indictment or removal from office, or both. The plaintiff, in an action against a public officer for breach of a duty primarily due to the public, must show both the breach of an official duty, in the correct discharge of which he was interested, and the special resultant injury to himself. All these elements must be present. This rule is necessary to prevent public officers from being annoyed and harassed by groundless actions and in the promotion of good public service. 23 Am. & Eng. Ency. of Law, 379, 380; Mechem on Public Officers, sections 670-674.

113 Tenn—40

Therefore a right of action against a public officer growing out of a breach of an official duty involving individual rights is not complete and does not accrue until the happening of a consequential injury resulting proximately from the breach. This principle is recognized by our statute (Code 1858, section 456; Shannon's Code, section 570), providing that one who has been injured by the failure of the register to perform an official duty shall have a right of action against him and his sureties on his official bond.

The action not accruing and being complete until the injury to the individual occurs, under the elementary principle that no time runs to the plaintiff until he has the right to sue, the statute of limitation does not begin to run until that time. If the rule was otherwise, meritorious actions might be barred before the plaintiff had the right to bring his suit. This would work gross injustice. It would be a denial to the injured party of his day in court.

Mr. Wood, in his work on Limitations of Actions, says: "Although, as has been seen, time commences usually to run in a defendant's favor from the time of his wrongdoing, and not from the time of the occurrence to the plaintiff of any consequential damages, yet, in order to produce this result, it is necessary that the wrongdoing should be such that nominal damages may be immediately recovered. Every breach of duty does not create an individual right of action. And a distinction sometimes similar to that which has been drawn

by moralists between duties of perfect and imperfect obligations may be observed in duties arising from the law. Thus a breach may not inflict any immediate wrong on an individual, but neither his right to a remedy, nor his liability to be precluded by time from its prosecution, will commence until he has suffered some actual inconvenience. But it is otherwise where there ·is a private relation between the parties, where the wrongdoing of one creates a right of action in the other; and it may be stated as an invariable rule that when the injury, however slight, is complete at the time of the act, the statutory period then commences, but, when the act is not legally injurious until certain consequences occur, the time commences to run from the consequential damage, whether the party injured is ignorant of the circumstances from which the injury results, or not."

The principle is applied and the reasons for it are well stated in the leading case of *Hartford* v. *Waterman,* 26 Conn., 324. "In that case an officer made a mistake in his return on an attachment, which was not discovered until final judgment had been obtained in the case, and execution had been issued and was about to be levied. In the meantime the debtor had become insolvent, and the plaintiff lost his debt. The plaintiff then sued the sheriff, who pleaded the statute of limitations. If the cause of action accrued at the time of the false return, then it was barred; but, if it did not accrue until actual damages resulted to plaintiff, then it was not

barred.    The court held that the mere neglect to serve
process, or the false return of the process, 'is not in it-
self a legal injury;' that where the act of a public of-
ficer is involved, 'there is no direct relation between the
public officer and the party in whose behalf the duty
is to be performed, and the breach becomes a ground of
action in favor of the individual only when damage re-
sults to him in consequence.' " The court says in part:

"The consequences are not, in such cases, mere aggra-
vating circumstances enhancing a legal injury already
suffered or inflicted, nor are they the development of
such a previous injury, through which development the
party is enabled for the first time to ascertain or appre-
ciate the fact of the injury; but, inasmuch as no legal
wrong existed before, they are an indispensable element
of the injury itself, and must therefore fix or may fix the
period when the statute of limitations shall commence
to run.   Authorities can hardly strengthen a propo-
sition so manifestly unjust.

"The duties imposed upon public officers are analo-
gous to those of moral obligations.   Their violation is
not necessarily a legal injury to those in whose favor
they exist.   They must affect some right, such as the law
is wont to redress, before they can be made the subject
of a suit.   It is the duty of a municipality to keep cer-
tain highways free from obstruction.   The duty is to
the public for the benefit of every individual in the com-
munity.   If an obstruction is negligently permitted to
exist, it may be said that, in a sense, a duty to each in-

State v. McClellan.

dividual is violated.   But it is not competent for every inhabitant of the vicinage thereupon to bring his action for the breach of duty to himself; nor even if he is put to some trivial inconvenience by the obstruction.   *Butterfield* v. *Forrester,* 11 East, 60.   The mere violation of the public duty, although the duty is to him indirectly, involves no correlative legal duty on his part to sue for such violation.

"An officer neglects to serve a subpoena.   It would be said to be his duty to serve all subpoenas.   A plaintiff who gave it to him goes on trial.   The witness voluntarily appears, and a full recovery is obtained.   Could suit be sustained by the plaintiff for the nonfeasance of the officer?   Is the plaintiff's right legally coextensive with the officer's duty?   Or must some other right of the plaintiff's be affected by the neglect, to enable him to sustain an action?

"A writ of attachment is served, without the plaintiff's consent, as a summons.   The defendant is perfectly responsible, and the plaintiff, without delay or embarrassment, obtains complete pecuniary satisfaction.   Can he resort to the officer for breach of his duty in not complying with the mandate of the writ?

"To hold that every nonfeasance and misfeasance of an officer is actionable *per se* in favor of the party who is the special subject of the duty neglected or violated would be a source of infinite confusion.

"Being of the opinion that no right of the plaintiff was involved when the officer departed from his duty in

the service and return of the plaintiff's writ of attachment; that he suffered no legal injury until the consequences of that breach of duty were brought home to him by his failure to enforce his execution; that until then he had no right of action whatever—we decide that the statute of limitations took date from the time of the consequential injury, and not from nonfeasance or misfeasance of the officer, and advise that judgment be rendered for the plaintiffs."

The case of *People, to the Use of Tritch,* v. *Cramer et al.,* 15 Colo., 155, 25 Pac., 302, is also in point. This was an action brought against a sheriff and the sureties on his official bond for negligence in failing to levy an attachment.    The allegations in the declaration  were that Tritch sued out an attachment, and instructed the sheriff to levy the same at once on a tract of land of which he gave the description; that the sheriff negligently failed to make said levy until about three months later at which time, Tritch having obtained judgment, his execution and attachment were levied together on the land; that, between the date on which the attachment had been placed in the sheriff's hands and the date on which he levied it, judgments for a  large  amount were recovered against the defendant in the attachment suit, which were recorded and became prior liens on his real estate; that subsequently the property was sold under Tritch's execution, and he bid it in and was obliged to pay much more than the value of the property in order to satisfy the claims of the judgment cred-

itors whose liens had attached prior to his levy; and he
sued to recover the amount which he had to pay through
the alleged negligence of the sheriff "in failing to levy
the writ of attachment until after the liens had been
acquired by other creditors as aforesaid." Demurrer
was interposed on the ground that the action was barred
by the statute of limitations, which demurrer the lower
court sustained, and the plaintiff sued out a writ of er-
ror. The statute applicable provided that "all actions
against sheriffs . . . upon any liability incurred
by them, by the doing of any act in their official capacity
or by the omission of any official duty, . . . shall
be brought within one year after the cause of action shall
have accrued." If the cause of action accrued when "the
alleged official misfeasance occurred," then the action
was barred; but, if it did not accrue until "the conse-
quential injury complained of" occurred, then it was not
barred. The supreme court held (following and quoting
from the Connecticut case above cited) that plaintiff's
cause of action did not accrue until he sustained an in-
jury from the negligence complained of.

"It is hardly necessary to say that the sheriff belongs
to the class of public servants last above designated.
He is elected by the people, and occupies his office dur-
ing a term specified by statute. His functions and fees
are prescribed by law, and do not depend upon contracts
with the persons whom he incidentally serves. He is a
public officer, and his duties are primarily of a public
nature. In the discharge of these duties he sometimes

acts for private suitors, whose right, as above defined, is the judicial collection of their debts, or enforcement of some other legal redress, as the law may authorize. If the negligence or misconduct of the officer in no way prevents or retards the vindication of this right, no legal injury results, and, in our judgment, no right of action accrues. As, for instance—employing two familiar illustrations—the sheriff negligently fails to serve the subpoena placed in his hands, but the witness voluntarily and without any further effort of the suitor appears at the appointed time and place and gives the desired testimony; or the official carelessly omits to levy a writ of attachment as directed, but the judgment ultimately recovered is nevertheless promptly paid. Were we to hold in these and all similar instances a right of action exists in favor of the suitor, and therefore that he may recover from the sheriff or his bondsmen at least nominal damages, the responsibilities of that official would be rendered more onerous and his position more hazardous than it is already. Every suitor who could truthfully complain of negligence on the part of the officer, though he be in no wise injured, might harass that official with a judicial proceeding, and mulct him in costs, besides his attorney's fees. We do not think the law contemplates or requires the imposition of this burden, and shall hold accordingly. . . .

"Tritch brought the present suit within a year from the time he suffered the alleged consequential injury, and it follows from the foregoing conclusions that the

objection predicated upon the bar of the statute of limitations must be overruled.''

This is also held in the case of *Steel & Johnson* v. *Bryant,* 49 Iowa, 116—an action against the clerk of the court and the sureties on his official bond to recover damages alleged to have been sustained by the plaintiffs by reason of the negligence of the clerk in accepting an insufficient stay bond on a judgment in favor of plaintiffs. A demurrer was interposed on the ground that the right of action was barred by the statute of limitations, and, if the cause of action accrued when the negligent act was committed, the demurrer was good, while, if the cause of action did not accrue until plaintiffs sustained a loss on account of the negligent act, the demurrer was not good. The supreme court sustained the plaintiffs' contention, and overruled the demurrer reversing the judgment of the lower court. The court said, among other things:

"This action is not based on any contract between these parties, either expressed or implied, but for the negligent performance of a duty imposed. Therefore the authorities cited in actions based on contracts, or acts of negligence in failing to properly perform obligations resulting from contracts, are not strictly applicable.

"As no right of action against this surety existed until the expiration of one year, we think none accrued against the clerk for negligently accepting the bond until that time. In other words, the time when the ac-

tion accrued on the bond is the time when it accrues
for the negligent act. It is true that the negligent act
had been committed before that time, but there was no
immediate injury or damage, nor does the law imply
that there was any. The injury and damages were conse-
quential, depending on the happening of certain things
in the future. If either the principal or the surety paid
the judgment within the year, there was neither injury
nor damage. The plaintiffs could not have proved either
to the satisfaction of a court or jury. The bond was
valid on its face, and the plaintiffs were not bound to
know or inquire as to the solvency of the sureties un-
til the expiration of the stay. The bond, so far from be-
ing void, was not voidable, for no action could be taken
by the plaintiffs which would have the effect of avoiding
the action of the clerk.

"Now, until Bayless became insolvent the plaintiffs
were not injured; and, if they had brought an action
against the clerk on the day the bond was taken, such
action could not have been maintained, for the simple
reason no right of action existed or had accrued."

Registers, as we have said in disposing of the first as-
signment of error of the defendants, are public officers,
and their duties are due primarily to the public. The
records which they are required to make and keep and
preserve in a public office in the county town, always
accessible to the public, are public records.

The registration system of this State was devised
to perpetuate the evidence of land titles and other in-

struments authorized by law to be registered, by providing for records to be made of them, subject to the inspection of the public at all times, in the interest of the public, and for the safety and convenience of all persons contracting in reference to them and the property to which they related, and to prevent frauds upon vendors, vendees, and their creditors. It was also created for the benefit of those individuals who may have conveyances or other instruments registered, to protect them against subsequent vendees without actual notice of previous conveyances and proceedings by creditors of their vendors to subject the property conveyed to the payment of their claims.

This court has said that the registration and probate laws are founded upon large grounds of public policy, and that their object is, on one hand, to give the community notice of changes in the ownership of real property, etc., and, on the other, to preserve and perpetuate the muniments of titles and the evidence of their creation, as well as to prevent frauds both upon landowners and their creditors. *Yerger* v. *Young's Heirs,* 9 Yerg., 42; *Tate* v. *Lawrence,* 11 Heisk., 511.

And in a more recent case—an action against a register by a subsequent mortgagee for failing to index a mortgage—it is said that the office is one of great responsibility, and that the duties and functions of the register are regarded as very important to the public and to individuals, and the possible consequence of their mistakes should doubtless admonish them to be

careful and painstaking in the discharge of those duties. *Maxwell* v. *Stuart,* 99 Tenn., 419, 42 S. W., 34.

It is clear that registers are public officers charged with duties primarily to the public, and secondly to those individuals who have the right to demand their services and resort to the records in their keeping.

That a civil action will not lie for a nonperformance of these duties, unless a special injury follows, is also clear upon principles of the common law, and under the terms of the statute providing that they shall be liable to those injured by a breach of their duty. A failure to index a conveyance is a breach of duty for which a register may be indicted, and any one who is injured thereby may maintain an action and recover damages sustained. The injured party may be a stranger to the conveyance not indexed, and his first connection with the transaction, and his injury in consequence of the breach of duty, may occur ten years after it has happened, by being misled in relation to the title of property purchased, or upon which he accepts a mortgage, through the first conveyance or mortgage not being indexed, as in the case of *Maxwell* v. *Stuart,* supra. Shall it be said that his right of action is barred four years before he was interested in the records, and, of course, injured?

The case of the plaintiff is equally as strong. He was not injured by the failure to correctly register his deed. It was good, without registration, between him and his vendor and subsequent purchasers with notice. If his

vendor had not become indebted, or if he had paid his debts it is probable that no injury would have happened. In other words, the only effect of the register's negligence was that complainant's deed was not effectual as against creditors or subsequent innocent purchasers from his grantor. If his grantor had either contracted no debts, or paid them himself, so far as appears in this record, the register's mistake would have been innocuous; and, as complainant's right of action, both at common law and under the statute, depends on his sustaining injury by the officer's breach of duty, his cause of action could not and did not accrue until his property was levied upon and subjected to the payment of another's debt.

It is true that a different doctrine is announced in *Daniel* v. *Grizzard*, 117 N. C., 105, 23 S. E., 93, but we think that the better reasoning and the weight of authority are against the view taken by the North Carolina court. That the register is a public officer, and owes his official duty primarily to the public, is a proposition which cannot be successfully controverted; and it would seem to be sound public policy to require that, before an individual should be permitted to maintain an action against him upon a matter growing out of the performance or nonperformance of these duties, he should show not only a breach by such officer of official duty, but a damage or injury to himself resulting therefrom. So far as appears to us, complainant's grantor owed no debts whatever at the time the deed to com-

State v. McClellan.

plainant was made or the mistake of the register was committed. The debt to the payment of which this land was subjected was created in April and May, 1896, and within six years before the instituting of this suit. If, therefore, complainant had discovered the error in the registration of his deed, and had brought suit at any time prior to that date, he could not even have shown that his grantor had any creditors who could possibly enforce their claims against this land; and it would seem like a mockery of justice to say that the law required him to sue before he had anything to sue for.

The cases cited by appellant's counsel to the effect that the right of action for breach of contract accrues at the time of the breach are clearly distinguishable from an action for official negligence, and the distinction is set forth in the cases from which we have quoted.

The decree of the court of chancery appeals is affirmed, with costs.