## A. KINGMAN MOORE, et al. v. J. L. HUDSON, et al.

Eastern Section.   January 7, 1928.

Petition for Certiorari denied by Supreme Court, March 31, 1928.

Green & Webb, for complainant.

J. Alvin Johnson, Ayers & Broughton, Anderson & Word, and White & Leonard, of Knoxville, for defendant.

PORTRUM, J.   A Kingman Moore brought the original bill in this cause to collect three promissory notes of $1000 each, which were secured by a first mortgage on the property of J. L. Hudson and wife, the notes having been made payable to S. R. Rambo & Company, and negotiated to Moore before maturity and for value.

The defendants J. L. Hudson and wife answered this bill and set out the following defense:

That said three notes had been satisfied because the defendants had executed another mortgage to H. N. Justus, trustee, to secure a note of $4000, payable to the Wright-Cruze Hardware Company, and out of the proceeds of this note the three notes were paid by the Wright-Cruze Hardware Company turning over to S. R. Rambo & Company

the principal and interest, and that S. R. Rambo & Company was the agent of the rightful holders. The money was paid over to Rambo without securing the notes, Rambo taking the money as if he owned the notes when, as a fact, the notes were owned by Moore and were never paid by Rambo, notwithstanding he had received the principal and interest as herein detailed.

Hudson and wife filed a cross-bill, making the Wright-Cruze Hardware Company a party defendant, and alleging that on December 14, 1918, they executed a trust deed to H. N. Justus, trustee, to secure a note of $4000 made payable to the Wright-Cruze Hardware Company, that it was the purpose of the parties to pay off and satisfy the prior trust deed making the deed of December 14th a first mortgage, the Wright-Cruze Hardware Company advancing the funds sufficient to discharge all first liens, that is, the $3000 first mortgage and certain delinquent taxes, leaving an amount sufficient to pay the account of J. L. Hudson due the Wright-Cruze Hardware Company. The purpose of the company was to secure their account of $701 (the account was $1.20 more but the figures were made even $4000 and not sufficient to pay this $1.20). The president of the company signed a batch of checks in blank and entrusted them to the company's credit man, H. N. Justus, who took them to the office of attorney A. E. Mitchell, when the amount of the checks was calculated and filled in, and it is then alleged that the representative of the Wright-Cruze Hardware Company distributed the checks among the parties entitled excepting one, the party to whom this check was going being present and taking his check. In making this distribution, the representative of the company turned over the check to Rambo without requiring the production of the notes and because of this Rambo never paid the notes, they were never satisfied and are now sued on. The company permitted a pro confesso to be entered against it, and issues raised under the cross-bill were permitted to stand in abeyance pending the fight upon the original bill, the cross complainants and the cross defendant joining in the contest against the original complainant, but in this they were unsuccessful and, after a judgment was entered against the defendants on the original bill for the principal and interest, the attack turned to the cross-bill, and the cross defendant, upon motion, was permitted to file an answer, the pro confesso having first been vacated. Among other defenses is plead the statute of limitations of six years, because the check was turned over to Rambo in December, 1918.

The proof was developed and the case heard by the Chancellor when he held that it was the duty of the Wright-Cruze Hardware Company to pay and discharge the notes secured by the first mortgage, that it had undertaken to pay the notes but that its representative negligently paid over the checks without requiring the production and cancellation of the notes in question; that it was the duty of the company to

discharge this obligation and it had failed to discharge it; therefore, the cross complainants, Hudsons, were entitled to a judgment against if for the amount of the notes, interest and costs. From this the cross defendant company has appealed, and the assignments of error present three questions, one of fact and two of law. They are:

1. Did a representative of the Wright-Cruze Hardware Company take the check to Rambo & Company, or did Hudson turn it over to Rambo himself?

2. Is there a fatal variance between the pleadings and proof?

3. Granting that the company turned over the check to Rambo, is the right of action barred by the statute of limitations of six years?

I.

Considering the first question, it is insisted that the evidence does not preponderate in favor of Hudson but, on the other hand, it preponderates in favor of the Wright-Cruze Hardware Company upon the question of who delivered the check to Rambo. The two witnesses for the company, Mr. Mitchell and Mr. Justus, state that they do not remember the details of the transaction taking place in Mr. Mitchell's office other than Mr. Justus brought signed blank checks for the purpose of filling in, after the calculation had been made by the attorney; that the checks were made out to the creditors, one being S. R. Rambo and some unknown person adding in "& Co." making it payable to S. R. Rambo & Company. Another was made to a creditor who was present and received his check; and the others were payable to the officers in the satisfaction of delinquent taxes. Mr. Mitchell testified that Hudson was very much disappointed because he could not receive any money out of the $4000, the full sum being required to discharge his obligation. He complained of the penalties due for the delinquent taxes and requested that he be given the checks made payable to the officers in order that he might be able to reduce the payment and secure something for himself. It is argued that because of this he was permitted to disburse the checks, and this is practically the only evidence showing that Hudson turned over the check to Rambo. Hudson testified that he was not present in the city on the day the checks were delivered. The company tries to show that he was present because of certain entries of charges to him in the book of accounts. This is rebutted by testimony showing that others got the articles charged. As we view this evidence, there is no evidence adduced by the defendant company as to who delivered the checks and, in the absence of evidence, it cannot be said the evidence preponderates in favor of the company.

Hudson and his wife each testified that Hudson did not carry the checks. The parties are interested but this is not a reason why their evidence should be disregarded, especially if the circumstances favor them. The Chancellor drew an inference that it was an ordinary

cautious method for a party in the position of the hardware company to see to it that the funds were distributed so as to discharge the prior liens. He inferred that the company pursued this cautious method. It is said that this inference is overthrown because Hudson requested the representative of the company to be allowed to take around the checks in order that he might get his penalties on his delinquent taxes reduced. From this it is argued that an inference arises to the effect that he was permitted to carry the checks around and, therefore, he turned over the check to Rambo. This is by no means a conclusive inference because there is an inference that since it was necessary for him to request the right to carry the checks around that the company was withholding the checks, and there is no reason presented why the company should turn over the Rambo check upon this request. The company saw to it that the lien secured by the first mortgage was released upon the record. This evidences caution upon the part of the company, and leads us to believe that if the company was cautious in one thing, it would be cautious in another, but that it relied upon the integrity and high reputation of Rambo which the company thought was sufficient to relieve it from the further caution of requiring the production of the notes.

The court has no reason to believe the company's witnesses are insincere in the statement that they do not remember who distributed these checks. The court cannot require of the cross complainant, who carries the burden of the proof, more than he produce the witnesses present; he has done this, and while he and his wife were mistaken in some of the details, yet both were positive upon the material fact of who carried the checks. If the defendant's witnesses cannot remember, it is their own misfortune, or perhaps, if they remembered they would support the contention of the cross complainants. Certainly it was the cautious thing for the company to distribute these checks. The company was cautious in seeing that the checks were made out to the parties entitled to the money, the company also saw that the liens were discharged by a release upon the books of the register, and the court has reason to believe the company would also be cautious in seeing that the check was paid over to Rambo. From the weight of the proof, Hudson was not here on the day the check was paid over to Rambo. Therefore, the court concludes that the Chancellor was correct in holding that Hudson had carried the weight of the proof and that it preponderated in his favor upon this issue.

II.

The second question is that there is a variance between the pleadings and the proof. We do not think this question well made. The party's statement of the contention is:

"We have already called the court's attention to the variance to which we refer. However, for the purpose of making the matter

plain, we again refer to the cause of action set up in the cross-bill. The plaintiff set up a contract and a breach thereof resulting in damages to him, which contract, according to the allegations of the cross-bill, imposed upon the plaintiff the duty of executing a mortgage, and a corresponding duty upon the part of the defendant to make payment of the plaintiff's debt. The plaintiff does not state the date when this contract is alleged to have been made. To the question as to when this contract was entered into, the answer necessarily must be that it was before the execution of the note and mortgage.

"In the plaintiff's proof, he sets up an alleged contract made in Mitchell's office after the note and mortgage were executed and after the checks were written out. It is manifest, therefore, that the contract set up in the cross-bill is not the same contract testified to by the plaintiff in his deposition. The contract set up by the plaintiff in the proof would have created any agency on the part of the defendant—a special agency in which the defendant was undertaking to act for and on behalf of the plaintiff's debt.

"The record presents a peculiar situation, in that the Chancellor neither found that there was a contract in favor of the plaintiff as alleged in his cross-bill, nor a contract such as the plaintiff set up in his proof. The Chancellor's finding . . . the material part . . . is as follows:

" 'H. N. Justus, the agent of the cross defendant, did not specifically promise or agree to handle any of said checks in the settlements to be made with the creditors of J. L. Hudson; but the court finds that either he, or some other person for the Wright-Curze Hardware Company, undertook upon their own account to handle said checks for the purpose. . .' "

"This, in substance, is a finding that, if the plaintiff had any cause of action whatever, it was not a cause of action growing out of the breach of a contract entered into either before the mortgage was executed and by the terms of which Hudson agreed to execute a mortgage, nor of a contract entered into after the mortgage was executed and the checks written out. It was a finding that the defendant, through some undisclosed agent, undertook, without agreement or contract with the plaintiff, to make disposition of the funds represented by the $4000 mortgage. Eliminating the contract feature, the cause of action, if any, presented by the finding of facts, is a bare tort, of which the chancery court has no jurisdiction."

The cross-bill sets out the fact of this transaction and it is averred therein:

"That said Wright-Cruze Hardware Company failed to make payment of said notes as they agreed to do, or failed to take up and cancel said notes, as they agreed to do and claimed they had done. . . ."

We think that this, together with the facts as set out in the cross-bill, is a sufficient averment of an implied contract arising as a matter of law from the dealings of the parties. It is true, as the Chancellor found, there was no expressed agreement by the Wright-Cruze Hardware Company or its representative to handle the checks; but it undertook as an incident of the contract to control to proceeds of this mortgage and to see to the application of the funds so as to protect itself. We think the company had a right to see to the application of the funds, and in doing so it committed no wrong or breach of contract with Hudson. Therefore, the law implies as a part of the contract the right of the company to see to the application of the funds. It did not, or has not, properly applied the funds as it was its duty to do, and the wrong complained of is the wrong alleged in the cross-bill and proven by the evidence.

### III.

It is said this cause of action arose in December, 1918, and is barred by the statute of limitations of six years, which is plead in the answer. Hudson attempts to refute this by saying that the cause of action grows out of a continuing duty, i. e., the duty of the company to pay the notes held by Moore, as it was the company's duty to pay it in December, 1918, and has continued to be its duty to pay it since that time, and the company may at any time discharge its duty by paying the debt. Or if a time is fixed, that it was the company's duty to pay the debt on or before maturity of the debt, and since all the parties thought the debt was discharged up until Rambo's failure, then the cause of action arose when it became known that the debt was outstanding and this time was within the six-year period.

It is further insisted that this case presents an exception to the general rule, the rule and exception being defined as follows:

"As a general rule, the cause of action for wrongful act, whether negligent or willful, for the breach of a contract or duty, accrues immediately upon the happening of the wrongful act or the breach, even though the actual damage resulting therefrom may not occur therefrom until some time thereafter. The statute, therefore, begins to run from the occurrence of the act or breach complained of, and not from the time of the damage resulting therefrom.

"Where, however, the cause of action is based upon consequential as distinguished from direct damages, and involves an act or omission which might have proved harmless, the cause of action must be taken as accruing only upon the actual occurrence of the damage, so that the statute runs only from that time." Am. & Eng. Encyc. Law, 2nd Ed. Vol. 19, page 200. This authority is cited in the Tennessee case of State v. McClellan, 113 Tenn., 624.

The issue then between the parties is: does the case fall within the exception to the general rule as above defined, and the answer to this is involved in great doubt. The authorities are in conflict. Those cited by the company contain reference to overruled cases and dissenting opinions. It illustrates that there is a conflict among the States as well as within the States. It would require an exhaustive study of the cases to locate the evasive distinction, and then, perhaps, the court would be unable to elucidate it and the distinction would remain lost. For this reason this question is pretermitted.

It is claimed that the statute does not apply because the case falls in another exception known as a fraudulent concealment of the cause of action. The rule is defined as follows:

"It has also been the rule in equity that the defendant's fraudulent concealment of a cause of action will postpone the running of the statute until such time as the plaintiff discovers the fraud; the defendant having by his own wrongdoing prevented the plaintiff from instituting his suit, will not be permitted to take advantage of his own wrong by setting up the statute as a defense." Am. & Eng. Encyc. Law, 2nd Ed. Vol. 19, page 243.

The Chancellor found as a fact that Hudson was employed away from the city and he returned on week-ends. He came to Knoxville on Saturday when the mortgage was executed for the express purpose of attending to his business. He returned to his work out of the city and in another county, Saturday afternoon, after the matter had been completed in the office of Mr. Mitchell. He returned later to the city and made inquiry of the Wright-Cruze Hardware Company, through its Mr. Justus, if it had taken up the Rambo notes, when Mr. Justus informed him the matter had been settled. He also made inquiry of Rambo and was informed the notes had been paid. Justus says he does not remember having this conversation with Hudson. In the next question, he says he did not tell Hudson he had the cancelled notes in his file. Of course, if he did not remember the conversation, the assertion that he did not tell him the notes were in the file was a conclusion. Hudson testifies directly, and Justus does not remember, and we must concur with the Chancellor in holding Hudson carried the burden of proof. Now, if Justus lulled Hudson to sleep by telling him that the matter had been attended to, the law holds this equivalent to a fraudulent concealment, because one must not, even unnecessarily, speak falsely when it is his positive duty to speak truthfully. Certainly he can not rely upon his own wrongful act in a court of equity to defeat the cause of his adversary. For this reason we think the statute of limitations is not applicable and the defense is overruled.

The decree of the Chancellor is affirmed, there being no question made upon the regularity of the entry of the judgment against

Wright-Cruze Hardware Company at this stage of the proceeding. The case is remanded to the chancery court to carry out the order of sale in the event the Wright-Cruze Hardware Company or the surety on its appeal bond fails to pay in the judgment entered in this court against it and the fact certified to the chancery court by the clerk of this court. In event the judgment is paid in to this court, it is ordered paid out by the clerk to the party of record owing the Moore note or judgment entered in his favor in the chancery court and also the costs of the cause.

Snodgrass and Thompson, JJ., concur.