# PETERS *v.* WHITE.

## (*Knoxville.* November 6, 1899.)

1. WORKHOUSE. *Corporal punishment of convict.*

If workhouse commissioners have authority under the statute to inflict corporal punishment upon the inmates of that institution, they have no power to delegate that authority to a workhouse superintendent or other person. (*Post, p. 393.*)

Code construed: § 7422 (S.).

Cases cited: Cornell *v.* State, 6 Lea, 624; Smith *v.* State, 8 Lea, 744; Boone *v.* State, 8 Lea, 739.

2. SAME. *Inmate's child.*

The superintendent cannot lawfully receive an inmate's child into that institution, or permit it to remain even on payment of its board. Much less can he lawfully demand payment of its board and upon a saucy refusal of his illegal demand proceed to chastize the inmate. (*Post, pp. 394, 395.*)

---

FROM KNOX.

---

Appeal in error from Circuit Court of Knox County. JOSEPH W. SNEED, J.

GREEN & SHIELDS for Peters.

H. H. TAYLOR and J. W. COULTON for White.

WILKES, J. This is an action for damages for injuries to the person. The defendant, Peters, is

Superintendent of the Knox County Workhouse, and the plaintiff was an inmate of the same, committed until she should work out a fine and costs. When she was taken to the workhouse, she carried with her an adopted child, some nine years old. She placed in the hands of Huffaker, one of the guards, a small sum of money, some $7.50. After she had been in the workhouse a day or two, the Superintendent told her she would have to send the child away, or pay board for it. She refused to do so, saying that she had offered the money to the committing Justice, and he had given it back to her, and she would not give it up any more.

The Superintendent's version is that he told her she was talking too much, and she replied that she would talk as much as she pleased, and dared him to whip her. Her version is she told him she had nowhere to place the child, and begged him not to whip her as she was sick. He called for the "bull whip," and when it was brought, he struck at the woman. She grappled with him, and forced him back until one of the guards came to his assistance, and together they threw her upon the floor, and struck her several times, some six or seven, with the leather part of the whip, she says, upon her nakedness. He denies this, however. It appears that she was troubled with a heart affection, and the excitement and struggle caused her to faint, and she remained

unconscious for some time, and when finally she regained consciousness, after a day or more, she was discharged from the workhouse, although she had not worked out the fine and costs. She was sick for some weeks, and unable to work. The cause was tried before the Court and a jury, and there was a verdict and judgment for $500, and the defendant has appealed, and assigned a large number of errors, which it will not be necessary to notice seriatim. The plaintiff defended upon the ground that he had general authority from the Workhouse Commission to inflict corporal punishment for any misconduct or disorderly acts of the inmates.

The charge of the Court was, substantially, that the Superintendent had no authority to inflict corporal punishment in any case unless it had been investigated by the Commission, and directions given that it should be inflicted, and how and in what manner and to what extent it should be done, and if he inflicted corporal punishment without such specific order, in any case, it would furnish ground for recovery, and that punitive or exemplary damages might be awarded, if the conduct of the Superintendent was malicious and wrongful. The Court refused to allow defendant to prove that he had general authority or direction from the Commissioners to inflict such punishment. Other assignments are made of minor importance, such as that the verdict is excessive, and that the jury

was instructed that if the punishment had a tendency to and did aggravate any physical trouble the convict had, that might be considered in estimating the damages.

The provision of the statute under which the defendant seeks to justify his action is Section 7422 of Shannon's compilation, in these words: "Any person refusing to work, or becoming disorderly, may be confined in solitary confinement, and fed on bread and water, or subjected to such other punishment, not inconsistent with humanity, as may be deemed necessary by the Commissioners for the government and control of the prisoners."

It is said that this language necessarily implies that the Commissioners may establish rules and regulations, and we think this is so as to the general conduct and management of the house and its inmates, but it does not authorize the Commissioners to delegate their authority to inflict corporal punishment to a Superintendent or other person, if, indeed, they have such power themselves.

We need not pass upon these questions further than to say that the power to inflict corporal punishment upon the inmates of the workhouse could not be delegated to the Superintendent by the Commissioners, but if they could so delegate it they would not themselves be justified in inflicting the punishment inflicted in this case upon the provocation given. A convict does not lose all his right of protection for his person by being

sentenced to the workhouse, nor is his liberty to be restrained, except so far as it is done by the law under the sentence of the Court. The whipping post and lash, as means of punishment for criminal offenses, have long since been abolished in Tennessee as relics of the past, even when criminals have been convicted by a jury of their peers, and it would be an anomaly to hold that when a criminal had been thus convicted and sentenced by a Court he could not be corporally punished, and yet if he has been sentenced for some crime he might be so punished, at the discretion of one man, for another offense or fault, without even the form or semblance of a trial. It is true prisoners must be kept in subordination by proper means, but this can be done in the workhouse without the lash, as it has been done in the punishment of criminals. The right to inflict corporal punishment upon felons in the penitentiary is not involved in this case, and upon that question we express no opinion. In this case the defendant had no right to bring the child to the workhouse, nor to keep it there, and the Superintendent had no right to let it remain there, even if its board had been paid. It was not a proper place for the child to be. But the Superintendent had no right to demand pay for keeping it, nor to require the plaintiff to give up her money for that purpose. His demand upon the plaintiff was unlawful and arbitrary. We are

not able to see in her reply any sufficient provocation for the treatment the Superintendent gave her. She had a right to refuse to give up her money, and if she refused to send away the child, it furnished no ground for inflicting personal chastisement upon her. The Superintendent could himself have sent the child away, and should have done so. Nor was her language such as to make her disorderly, and if it had been she could have been punished otherwise.

The punishment was wholly without authority, and was arbitrary and illegal, and the charge of the Court was correct, and the verdict of the jury was fully warranted by the facts.

This is not a new question in this State. The cases of *Cornell* v. *The State,* 6 Lea, 624; *Smith* v. *The State,* 8 Lea, 744, and *Boone* v. *The State,* 8 Lea, 739, are in accord with this holding.

It is said that these cases have been rendered obsolete as the result of later acts of legislation. We do not think so. While the later statutes have, to some extent changed the workhouse system, such change has not operated to authorize the infliction of corporal punishment for such cause as appears in this case. Nor does it authorize the delegation of the power to whip to a Superintendent by the Commission.

The judgment is affirmed.