Hale v. Johnston.

E. W. HALE *et al. v.* MALACHI JOHNSTON.

(*Jackson.* April Term, 1918.)

1. **PRISONS.** Contract between city and county. Effect.

Under a contract between city and county for assignment of city prisoners to county workhouse, providing that the prisoners shall be "guarded and taken care of in every way by the county," a city prisoner was made a prisoner of the county workhouse, under the exclusive charge of the county commissioners and the county employees. (*Post,* p. 194.)

Acts cited and construed:  Acts 1911, ch. 237.

Cases cited and approved:  Cornell v. State, 74 Tenn., 624;  Boone v. State, 76 Tenn., 739;  Peters v. White, 103 Tenn., 390.

Code cited and construed:  Sec. 7411 (T.-S.).

2. **COUNTIES.** Responsibility of county commissioners.

Priv. Acts 1911, chapter 237, creating the board of commissioners for Shelby county and expressly conferring all the powers concerning the county business upon such board, although it divides the public business into three departments and requires a commissioner to be assigned to each department, does not make the commissioner in charge of any department exclusively responsible, and relieve other commissioners from responsibility, for acts of that department, since it confers all powers upon the board as a board, and requires it to meet at regular intervals and pass in review before the entire board the business of each department. (*Post,* pp. 194, 195.)

3. **PRISONS.** Liability of commissioners. Ill Treatment of prisoners.

As between county commissioners and foreman and guard of county workhouse, the rule of *respondeat superior* does not apply as to ill treatment by the foreman and guard of workhouse prisoners. (*Post,* p. 195.)

Cases cited and approved:  Lunsford v. Johnston, 132 Tenn., 615

Hale v. Johnston.

4. **PRISONS.** Lability of county commissioners. Ill treatment of prisoners.

As to the statutory duty cast upon county commissioners by Thompson's Shannon's Code, section 7411, as to treatment of workhouse prisoners, etc., and section 7391, forbidding inflicting punishment on workhouse convicts exceeding hard labor, the fact that commissioners knew nothing of the mistreatment of a particular prisoner, and did not participate in it, would not excuse them, if the cruelties administered to him as part of the discipline of the workhouse were attended with circumstances showing their failure to know and act in the premises was the result of willfulness and malice; the malice required not necessarily being express ill will towards the particular prisoner, or a conscious disregard of his welfare, but a promiscuous disregard of the interest and welfare of the inmates of the workhouse, that disregard of public duty which results from general recklessness, as well as express ill will. (*Post, pp.* 195-197.)

5. **OFFICERS.** Liability. Misconduct.

A common-law action may be maintained against a public official for misfeasance or nonfeasance in discharge of ministerial duties, if the elements of willfulness and malice are present. (*Post, pp.* 195-197.)

Cases cited and approved: Boyd v. Ferris, 29 Tenn., 410; Gamble v. Vanderbilt University, 138 Tenn., 616; Olmstead v. Dennis, 77 N. Y., 378; Clark v. Miller, 54 N. Y., 528; Keith v. Howard, 108 Tenn., 292; Army v. Supervisor, 11 Wall. 136.

6. **OFFICERS.** Liability. Ministerial duty..

Where a duty is absolute, certain, and imperative, and is simply ministerial, an officer is liable in damages to any one specially injured, either by his omitting to perform the task or by performing it negligently or unskillfully. (*Post, pp.* 197, 198.)

7. **OFFICERS.** Liability. Exercise of discretion.

Where an officer's powers are discretionary and to be exerted or withheld according to his own judgment, he is not liable to any private person for neglect to exercise those powers, nor for the consequences of a willful exercise of them, where no

Hale v. Johnston.

corruption or malice can be imputed to him, and he keeps within the scope of his authority. (*Post, pp.* 197, 198.)

Cases cited and approved:  Moynihan v. Todd, 188 Mass., 301; Smith v. Zimmer, 45 Mont., 282;  Doeg v. Cook, 126 Cal., 213; Tholkes v. Decock, 125 Minn., 507.

8. **PRISONS. Negligence of county commissioners. Death of work-house convicts.**

Where neglect of the statutory duties of county commissioners to see that workhouse convicts are properly treated resulted in death of such a convict from mistreatment by a foreman or guard, it was immaterial, so far as the commissioners'. liability therefor was concerned, whether their negligence was misfeasance or nonfeasance,. since they owed an active, both to the public and to the inmates of the workhouse, to see that the statutory mandate was carried out, and failure to perform a positive duty is positive wrong. (*Post. p.* 198.)

9. **PRISONS. Officers. Lability. Treatment of convict.**

Under Thompson's Shannon's Code, sections 7391, 7411, the duty of county commissioners to see that inmates of the county workhouse are kindly and humanely treated is a ministerial one, although the statutes may involve a certain discretion and judgment in working out the details by which the obligation imposed is to be discharged. (*Post, pp.* 19,8 199.)

'10. **PRISONS. Treatment of convicts.**

Such duty is owed both to the public generally and to any particular inmates of the workhouse. (*Post, pp.* 199, 200.)

11. **PRISONS. Treatment of convicts.**

Where corporal punishment was a part of the system of a work-house, and was constantly practiced in the most brutal ways for many years, and the county commissioners knew, or in the exercise of ordinary care could have known, of its existence, their failure to discharge their duties was the' proximate cause of punishment inflicted upon a convict from which he died, since, if they had been diligent to see that corporal punishment was not practiced as a part of the discipline of the workhouse, deceased would not have been killed in the manner in which he was. (*Post, pp.* 200, 201.)

Hale v. Johnston.

**12. PRISONS. Treatment of convicts.**

County commissioners are liable for injuries to workhouse convicts resulting from a system of corporal punishment practiced therein, of which they either knew or in the exercise of ordinary care could have known. (*Post, pp.* 200, 201.)

**13. PRISONS. Treatment of convicts.**

In an action for death of workhouse convicts, *prima-facie* proved to have been the result of corporal punishment habitually practiced in the workhouse, the defendant county commissioners must show that they exercised ordinary care to see than plaintiff's intestate was kindly and humanely treated. (*Post, pp.* 200, 201.)

**14. PRISONS. Treatment of convicts.**

Whether the defendant county commissioners exercised ordinary care to see that. plaintiff's intestate was kindly and humanely treated *held* for the jury. (*Post, pp.* 201, 202.)

**15. PRISONS. Treatment of convicts.**

Evidence of the mistreatment of other prisoners, and of the conduct of the foreman and guards with respect to them, was competent to show the constant, general, and notorious practice of beating prisoners, to show the neglect of defendants in not ascertaining the truth. (*Post, pp.* 201, 202.)

**16. WITNESSES. Cross-examination. Scope.**

In suit for damages, it was error, where plaintiff had called a defendant and asked him a few questions not material to his defense, to refuse to permit defendants' counsel to cross-examine him as plaintiff's witness, for, if a party calls a witness and examines him upon a single point, the other party may cross-examine him generally. (*Post. pp.* 202, 203.)

**17. WITNESSES. Cross-examination of one's own witness.**

In a suit for damages, where plaintiff had introduced a defendant as witness, plaintiff could not contradict him in material matters in his own defense, by proving he made statements out of court which he denied in court, for, when a litigant tenders a witness to testify in his own behalf, he thereby vouches for his credibility. (*Post, pp.* 202, 203.)

Hale v. Johnston.

Cases cited and approved: Sands v. Southern Ry. Co., 108 Tenn., 1; Cooley v. Galyon, 109 Tenn., 1.

18. **JUDGMENT.** Motion in arrest. Defect in declaration. Amendment.

In action for wrongful death, where, on motion in arrest of judgment after overruling of motion for new trial, defendants raised the point that the declaration failed to aver that deceased left next of kin, amendment of the declaration to include such averment was properly permitted. (*Post, pp.* 203, 204.)

19. **PLEADING.** Traverse of amended declaration.

Where, after defendants' motion for new trial had been overruled and they had moved in arrest of judgment, the declaration was allowed to be amended to aver that deceased left next of kin, it was error to decline to permit defendants to traverse the amended declation. (*Post. pp.* 203, 204).

20. **DEATH.** Next of kin.

Since there must be next of kin before recovery can be had for wrongful death, and the sum recovered inures to the benefit of the next of kin, this is a material part of plaintiff's case, and plaintiff must both aver and prove the existence of next of kin. (*Post, pp.* 203, 204.)

FROM SHELBY.

Appeal from the Circuit Court of Shelby County. —Hon. A. B. PITTMAN, Judge.

H. J. LIVINGSTON, for City of Memphis.

R. LEE BARTELS, for Shelby County.

SIVLEY & EVANS, J. W. CANADA, WILSON & ARMSTRONG and CARUTHERS EWING, for appellants.

BELL, TERRY & BELL and R. S. KEEBLER, for appellee.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

This suit was brought by Malachi Johnston, as administrator of the estate of Benjamin Brown, deceased, to recover damages for personal injuries resulting in the death of plaintiff's intestate. The suit was originally against Shelby county, city of Memphis, E. W. Hale, J. B. Duncan, C. W. Thomas, E. E. Strong, the Fidelity & Deposit Company, and the National Surety Company. There were verdict and judgment in the trial court in favor of the plaintiff and against all of the defendants, except E. E. Strong, but in the court of civil appeals the case was dismissed as to the city of Memphis, county of Shelby, the Fidelity & Deposit Company, and the National Surety Company. As the case stands before us, the only defendants are Hale, Duncan, and Thomas. Hale and Duncan are two of the county commissioners of Shelby county, and Thomas is a foreman of the county workhouse in charge of the workhouse gang. Commissioner McKay was originally sued with the others, but he died before the trial, and the suit abated as to him.

The plaintiff's evidence tends to show that prior to the election of defendants as county commissioners it had been the custom for a number of years in the Shelby county workhouse to work county convicts upon the public roads, and to this end they were

placed under a foreman and guards. The foreman and guards, as well as the general supervision of of the workhouse, were under a workhouse superintendent. At the time of the death of the deceased, the superintendent was one Strong. For many days prior to deceased's death, the defendant Thomas and a guard named Ricks had a number of convicts in their custody and worked them upon the public roads of the county in what is known as chain gangs. They kept all of the prisoners in their charge shackled by the feet while at work. They habitually applied the vilest names to the prisoners, and habitually administered corporal punishment to them in the most brutal and cruel way. They would strike them with sticks kept for the purpose, and kick them while at work on the road. They provided as a part of their system of control of prisoners a means of corporal punishment that was especially cruel and brutal. They would require prisoners to bend over an anvil and expose their naked persons for the purpose of receiving punishment at the hands of the foreman and guards with the heavy stick. Often punishment would be administered until the victim would fall off of the anvil in a state of exhaustion and collapse. He would then be required to again bend over the anvil and receive additional punishment in the same way. The custom above detailed obtained in the workhouse for many years prior to the election of defendants Duncan and Hale, and was in force at the time of their election and afterwards,

until the death of plaintiff's intestate as hereinafter detailed. The treatment of prisoners by the fore-man, Thomas, and guard, Ricks, became the subject of general discussion by the public, and, we may add, of general disgust.

The deceased was convicted of vagrancy in the city court of Memphis and fined $5. In default of payment, or proper security, he was sentenced to the workhouse under an arrangement between the city and the county hereinafter referred to. He was delivered to the workhouse authorities and sent out upon the road and assigned to the custody of Thomas and Ricks. While on the road he was so cruelly and inhumanly beaten by Ricks that he fell insensible and was laid upon the roadside. This was between three and four o'clock in the afternoon. He was permitted to remain on the roadside until the chain gang quit work for the day. About this time defendant Thomas came up to where the deceased was lying and asked Ricks what was the matter with him. To this Ricks replied that nothing was the matter. However, Thomas expressed the opinion that Brown had been killed by this beating, and ordered him to be carried to the stockade in a wagon. On the way to the stockade, deceased had convulsions, and, when he arrived there, Thomas ordered the shackles taken from his feet in order to see if he were able to stand up. When this was done, deceased started to fall, but was caught by attending convicts. Thomas remarked to him, with an oath, that he was

not as crazy as he pretended to be, and struck him violently with a leather strap. Deceased again went into convulsions and died during the night.

.The undertaker, who dressed the body, says that deceased had a large knot on the side of the temple, which could not have been made at one blow, and another knot on his left jaw, one on his head, one on top of his head, and numerous ones on his arms. He says his arms were beaten into a batter and one finger was broken. This assault on deceased was made July 23, 1912. About two days prior thereto, a white man named Gordon was beaten to death by these same guards, and on June 25, 1912, a convict named Bozeman was cruelly beaten by them. Later Thomas was indicted and convicted for the assault on Bozeman, and sentenced to a term in the penitentiary.

Defendants Duncan and Hale knew in a general way that the guards at the workhouse had been beating the prisoners for probably twenty years, and knew through the newspapers of the killing of Brown. They knew of the previous beating of Bozeman, and the indictment and conviction of Thomas; but they did not know of this until after the death of Brown. They discharged Ricks upon learning of the killing of Brown, but retained Thomas upon his promise to permit no other convict to be whipped. Defendants deny all personal knowledge of the occurrences at the time, but there is evidence to show that defendant Duncan expressly approved the policy of corporal

punishment of inmates of the workhouse, and defendant Hale admits that he knew, as a matter of general notoriety, that convicts had been beaten by the guards as a part of the workhouse discipline for a great many years prior to the time when defendant took office, January 1, 1912.

The county commissioners succeeded the workhouse commissioners by virtue of chapter 237 of the Acts of 1911, and the duties of the workhouse commission were devolved upon it. The particular duty which the county commissioners owed to the deceased, involved in this case, is that set out in section 7411 of Thompson's Shannon's Code:

"To see that the prisoners are properly guarded to prevent escape; that they are kindly and humanely treated, and properly provided with clothing, wholesome food properly cooked and prepared for eating three times a day when at work," etc.

Chapter 237, Acts 1911, gave the county commissioners power to employ such subordinate help as may be necessary in order to properly conduct the affairs of the county, and included the power to employ a workhouse superintendent, foreman, and guards. By section 7391, Thompson's Shannon's Code, it is forbidden that any form of punishment shall be inflicted on workhouse convicts exceeding hard labor, and this court has uniformly construed this section to forbid corporal punishment. *Cornell v. State*, 6 Lea, 624; *Boone v. State*, 8 Lea, 739; *Peters v. White*, 103 Tenn., (19 Pick.), 390, 53 S. W., 726.

The deceased was a prisoner of the city of Memphis. He was assigned to the county workhouse by virtue of a contract executed between the county of Shelby and the city of Memphis. This contract provided that:

"The city shall provide an officer at the county workhouse, whose duty it shall be to receipt for and discharge its prisoners, and to look after their general welfare."

It was also provided that no officer or keeper or assistant keeper should be appointed by the city without the approval of the superintendent of the county workhouse, and, if at any time he should disapprove them, they were to be removed by the city. Other provisions of the contract relate to the compensation which the county is to make to the city for the use of its convicts and need not be set forth here. It is further provided that: "When the prisoners are working for the county and for the city, they shall be fed, clothed, guarded and taken care of in every way by the county."

Other provisions of the contract are immaterial to this inquiry and need not be quoted here.

The negligence averred against the defendant commissioners is: (1) That a custom of brutally beating and maltreating prisoners by the foreman and guards obtained at the county workhouse as a part of its discipline for many years; (2) defendants knew, or by the exercise of ordinary care could have known, of this cruel and inhuman custom, and of

consequence knew, or could have known, of the killing of deceased; and (3) so knowing, in fact or in law, they took no steps to prevent the death of deceased.

Many defenses have been interposed by learned counsel, too numerous to be treated of separately in an opinion. The main defenses are: (1) That the commissioners are public officials, and as such are not liable for the wrongful acts of subordinates appointed under legal authority, unless the wrongful act is directed by, or the officer is guilty of negligence in the performance of a ministerial duty which directly and proximately brought about the injury; (2) that actual knowledge of the treatment which deceased underwent, followed, by mere inactivity on the part of defendants, did not make them liable for the murder of deceased committed away from camp, and as a result of an unprovoked assault with a "deadly weapon;" (3) that there is no liability against defendants, because the duty with which they are charged was to the public generally, rather than to deceased; (4) the negligence complained of consists in nonfeasance merely, for which a public officer is not liable, or the misfeasance of the officer's servant or agent, for which he is also not liable; (5) that the duties which defendants owed to the deceased were not ministerial, because the method and manner of discharging the duty was left to defendants; and (6) defendants issued instructions to the foreman and guards in the workhouse not to whip prison-

140 Tenn.—13]

ers, and the defendant Duncan, who was specially charged with the duty, frequently visited the workhouse and ascertained none of the facts with which he is charged.

For defendant Hale, in addition to the defenses above set out, it is urged that defendant Duncan was the county workhouse commissioner and had charge of the workhouse, and, if any liability exists against either, it is against him, and not defendant Hale.

We have no difficulty in holding that the contract between the city and county made the deceased a prisoner of the county workhouse, under the exclusive charge of defendants and the county employees. The contention that deceased was a prisoner of the city of Memphis, and in its custody, is not well made.

Nor is the contention of defendant Hale to the effect that defendant Duncan, being commissioner of the workhouse and public roads, and having special supervision of this department, was solely liable to the exclusion of Hale, well taken. Chapter 237, Private Acts 1911, creating the board of commissioners for Shelby county, expressly confers all of the powers concerning the county business upon the board of commissioners. It refers to the board in many of its sections, and in each instance it confers upon the board the power to act. It is true that it divides the public business into three departments, and requires the board to assign a commissioner to each department; but it nowhere confers upon the commissioner in charge of the particular department

power to act for the board in that department. It confers all powers upon the board as a board, and requires it to meet at regular intervals and pass in review before the entire board the business of each department. It would be impossible to say that the commissioner in charge of any of the departments had exclusive responsibility of that department.

We readily assent to the contention made for defendants that the rule of *respondeat superior* does not apply as between these defendants and the foreman, Thomas, and the guard, Ricks. It is useless to review the many authorities cited to sustain this contention, because we do not understand that the point is controverted. *Lunsford* v. *Johnston*, 132 Tenn., 615, 179 S. W., 151.

The real questions which we consider determinative of the liability of defendants Duncan and Hale are whether the duties imposed upon them to see that the prisoners in the county workhouse are kindly and humanely treated are: (1) Ministerial, (2) are they owed to deceased in particular, rather than to the public generally? and (3) was their violation by them the proximate cause of his injury and death?

If it be considered that the statutory duty was cast upon defendants to see that deceased was kindly and humanely treated, the fact that they knew nothing of his mistreatment and did not participate in it could not excuse them, if the cruelties administered to him as a part of the discipline of the workhouse were attended with such circumstances as to warrant the

jury in finding that their failure to know and to act in the premises was the result of wilfulness and malice. The malice required need not be express ill will toward deceased, or a conscious disregard of his welfare, but a promiscuous disregard of the interest and welfare of the inmates. of the workhouse would be sufficient—that disregard of public duty which results from general recklessness, as well as express ill will. However, it is well settled in this jurisdiction that a common-law action may be maintained against a public official for misfeasance or nonfeasance in discharge of ministerial duties, if the elements of wilfulness and malice are present. *Boyd* v. *Ferris*, 10 Humph., 410; *State* v. *McClellan*, 113 Tenn., 621, 85 S. W., 267, 3 Ann. Cas., 992; *Gamble* v. *Vanderbilt University*, 138 Tenn., 616, 200 S. W., 510.

In *State* v. *McClellan*, supra, it was said that: "Nonfeasance is the omission of an act which a person ought to do; misfeasance is the improper doing of an act which a person might lawfully do; and malfeasance is the doing of an act which a person ought not to do at all."

It was said that the rule included: "Nonfeasance, or neglect, or refusal, without sufficient excuse, to perform an' act which it was the officer's legal duty to the individual injured to perform; misfeasance or negligence, which . . . is a failure to use, in the performance of a duty owed to the individual, that. degree of care, skill, and diligence which the circumstances of the case reasonably demand; mal-

Hale v. Johnston.

feasance, or the doing, either through ignorance, inattention, or malice, of that which the officer had no legal right to do at all, as where he acts without any authority whatever, or exceeds, ignores, or abuses his powers. *Bell* v. *Josselyn,* 3 Gray, 309, 63 Am. Dec., 741.''

See *Olmsted* v. *Dennis,* 77 N. Y., 378; *Clark* v. *Miller,* 54 N. Y., 528; *Keith* v. *Howard,* 24 Pick, (Mass.), 292; *Amy* v. *Supervisor,* 11 Wall., 136, 20 L. Ed., 101.

The authorities seem to be in accord to the effect that public officials, who owe the performance of a ministerial duty to a particular individual, are liable to one injured as the proximate result of their nonfeasance or misfeasance in the performance of such duty. Where the duty is absolute, certain, and imperative, and is simply ministerial, the officer is liable in damages to any one specially injured, either by his omitting to perform the task or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, and to be exerted or withheld according to his own judgment, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a willful exercise of them, where no corruption or malice can be imputed to him, and he keeps within the scope of his authority. Some of the cases refer to an officer possessing such discretionary powers as a judicial or *quasi*-officer. But this rule goes no further than to relieve public officials of liability for non-

feasance and for the misfeasance of their servants or agents. *Moynihan* v. *Todd,* 188 Mass., 301, 74 N. E., 367, 108 Am. St. Rep., 473; *Smith* v. *Zimmer,* 45 Mont., 282, 125 Pac., 420; Shearman & Redfield on Neg. (3 Ed.), section 156; *Doeg* v. *Cook,* 126 Cal., 213, 58 Pac., 707, 77 Am. St. Rep., 171; *Tholkes* v. *Decock,* 125 Minn., 507, 147 N. W., 648, 52 L. R. A. (N. S.), 142, and notes.

Under these authorities, we consider it wholly immaterial whether it be considered that the negligence of defendants Hale and Duncan was misfeasance or nonfeasance. They had entered upon the discharge of their duties as county commissioners, and they owed an active duty, both to the public and to the inmates of the county workhouse, to see that the statutory mandate was carried out. Inaction would none the less be a misfeasance because they had assumed the discharge of the statutory duty, and failure to perform a positive duty is positive wrong. If one to whom the duty is individually owed suffers an injury as the proximate result of the failure to perform it, no reason can be perceived why the defaulting official should not be liable in damages. *Gamble* v. *Vanderbilt,* supra. The case last cited was a case of trustees of a public charity, but we apprehend that the principle involved is not different from that involved in this case.

Is the duty of defendants, as county commissioners, to see that the inmates of the county workhouse are kindly and humanely treated, a ministerial one?

Hale v. Johnston.

We think that it is. This court has refused in more than one instance to lay down a hard and fast rule by which to determine whether a statutory duty is ministerial. It was held that the duty of the county court to take a guardian's bond with good and sufficient surety was a ministerial duty although it is apparent that discretion is involved in determining the solvency of the surety. *Boyd* v. *Ferris,* supra. The statute under consideration may involve judgment and discretion in working out the details by which the obligation which it imposes upon. the commissioners is to be discharged, but nevertheless it is a plain and manifest duty, the doing or failure to do which is not within the discretion of defendants. It is positive, absolute, and mandatory. The commissioners cannot cast it off by willful neglect, or by a delegation of their duties to others. The humanity of the law would be greatly impaired if it should be held that such a duty is discretionary with the defendants. We would be slow to give the statute a construction which would justify the commissioners in exercising their discretion in so serious a matter as the one under consideration. Nothing but the plainest mandates of the statute would be sufficient justification for doing so.

It is also suggested that the statutory duty under discussion is a public one, owed to the public generally, and not to any particular individual. We think it is both. It is owed to the public generally, because the public is interested in the humane adminis-

tration of the law, and the results which a proper administration of its penal institutions are hoped to accomplish. But this does not mean that the duty imposed upon the commissioners is a discretionary one, which they can perform or not, as their judgment may dictate, toward a particular inmate of the workhouse. Such inmates are held in involuntary servitude, and cannot flee the cruelty which the guards may see proper to inflict upon them, and in this case the duty to prevent such punishment was tragically personal to deceased.

From what has been said, it naturally follows that the failure of defendants to discharge their duties in the premises was the proximate cause of the punishment inflicted upon deceased. If they had been diligent to see that corporal punishment was not practiced as a part of the discipline of the workhouse, it is apparent that deceased would not have been killed in the manner in which he was. This is different from the case of an outbreak of temper upon the part of a guard, followed by a blow which takes the life of an inmate. For this we apprehend defendants would not be liable. But the case made by plaintiff, both in the declaration and in the proof, is that corporal punishment was a part of the system of discipline of the workhouse, and was constantly practiced in the most brutal ways for many years, and that defendants knew, or by the exercise of ordinary care could have known, of its existence. The fact that defendants did not know, as a matter of

fact, that this form of discipline was constantly in vogue in the workhouse, does not meet the case made by the plaintiff. They must go further, and show that they have exercised ordinary care to see that plaintiff's intestate was kindly and humanely treated, and, of course, whether or not they did so is a question of fact, to be determined by the jury.

The proof shows that defendants issued a letter of instructions March 10, 1912, to the foreman and guards in charge of the workhouse, forbidding them to whip or brutally treat prisoners, or use intoxicating liquors, or to permit the prisoners to drink, and that frequently defendant Duncan visited the workhouse and made inquiry after the condition of the inmates, and failed to ascertain any of the practices set forth in this opinion, and other facts in defense of the charges made against them. It was a question for the determination of the jury as to whether they exercised due care in the performance of their duty toward deceased. The issuance of the letter, the report of the grand jury, the visit to the workhouse by defendant Duncan, did not constitute an absolute defense to this suit. All of these things might have been discredited by the jury, and the jury might have concluded that the notorious cruelties and barbarities in constant practice at the workhouse, as detailed by plaintiff's witnesses, were entitled to more weight than the testimony just referred to. It should be plain that the jury was within its rights in finding that defendants should have

known of this notorious practice, notwithstanding their testimony that they did not know. The evidence permitted to go to the jury of the mistreatment of other prisoners, and of the conduct of the foreman and guards with respect to them, was competent for the purpose of showing the constant, general, and notorious practice of beating prisoners, in order to show the neglect of defendants Hale and Duncan in not ascertaining the truth. There is no evidence of a ratification by them, and the request to the trial judge to charge upon this subject was properly denied, because the question does not arise.

In the progress of the trial in the circuit court, plaintiff introduced defendant Duncan and asked him a few questions which were not at all material to his defense. Defendants' counsel thereupon proposed to cross-examine the witness as plaintiff's witness. This was not permitted. The defendants offered a special request to the trial judge, to be given in charge to the jury, to the effect that defendant Duncan was plaintiff's witness, and his credibility was vouched for by plaintiff. This request was denied, and the circuit judge held that Duncan was not plaintiff's witness, and plaintiff could contradict statements which he made in his own defense. Plaintiff did contradict him in material matters, by proving that he made statements out of court which he denied in court. We are constrained to hold that this is reversible error. The question was gone over by this court in the case of *Sands v. Southern Ry. Co.,*

Hale v. Johnson.

108 Tenn., 1, 64 S. W., 478, and the authorities, both English and American, reviewed. The court adopted the English rule to the effect that, if a party calls a witness and examines him upon a single point, the other party is then at liberty to cross-examine him generally, and, of course, it has never been doubted that, when a litigant tenders a witness to testify in his behalf, he thereby vouches for his credibility. This extends to the whole case. In *Cooley* v. *Galyon*, 109 Tenn., (1 Cates), 1, 70 S. W., 607, 60 L. R. A., 139, 97 Am. St. Rep., 823, the case of *Sands* v. *Railway Co.* was expressly approved, and in that case it was held that cross-examination is only limited by the relevancy and competency of the evidence sought to be introduced.

There remains one more point for discussion. The original declaration failed to aver that deceased left next of kin. This point was raised by defendants on motion in arrest of judgment, after the motion for new trial was made and overruled. The point was met by plaintiff by offering to amend the declaration, so as to aver the existence of next of kin. The trial judge permitted the amendment, whereupon defendants offered a plea to the amendment, by which they sought to put in issue the averment of next of kin. The trial judge declined to permit the plea, or permit proof under the plea. We think this was error. We cannot consider, of course, the evidence in the record to the effect that deceased did leave next of kin, because no issue was made at the time this evidence

was introduced.   There must be next of kin before
a recovery can be had for a wrongful death, and the
sum recovered inures to the benefit of the next of .
kin.   This is a material part of plaintiff's case, and it
is necessary for plaintiff to both aver and prove
the existence of next of kin.   The deceased was a
vagrant negro in the city of Memphis, and this fact
strengthens the claim of defendants set forth in their
plea.   We think the trial judge erred in declining to
allow defendants to traverse the amended declaration.
We do not think the amendment came too late, but,
on the contrary, we think the action of the trial judge
was proper in this respect; but it introduced in the
case a new issue which defendants had a right to
contest.