JOSEPH W. VANCE *v.* E. W. HALE, *et al.*\*

(*Nashville.* December Term, 1927.)

Opinion filed February 4, 1928.

### 1. PUBLIC OFFICERS. DUTY. NEGLIGENCE. COUNTY OFFICERS.

County officers are not guarantors or insurers of the placing or erection of proper barriers or warnings at a chasm made in a public road during construction, but they are required to use ordinary care to peform such duties, and they would be personally liable for negligence in willful failure to discharge that duty. (Post, p. 393.)

Citing: Vance v. Shelby County, 152 Tenn. (25 Thomp.), 141; Hale v. Johnson, 140 Tenn. (13 Thompson), 182; Gamble v. Vanderbilt University, 138 Tenn. (11 Thomp.), 616; Board of Education v. Ray, 154 Tenn. (1 Smith), 179.

### 2. PUBLIC OFFICERS. DUTY. NEGLIGENCE. DECLARATION.

In order to hold a public officer liable as for misfeasance in the omission of a duty placed upon him, it must appear that such officer knowingly or negligently failed to perform said duty, or if the performance thereof was committed to a subordinate, that such officer did not exercise ordinary care to see that the performance was duly accomplished, and a declaration containing such allegation states an act or cause of action. (Post, p. 395.)

Citing: Johnston v. Hamilton County, 156 Tenn. (3 Smith), 298.

### 3. PUBLIC OFFICERS. EMPLOYEES. RESPONDEAT SUPERIOR.

If the county officers had exercised ordinary care in the selection of subordinate employees and had given proper instructions and

supervision, and had no reason to question the reliability of the employees, the county officers could not be held liable for negligence of such employees in a detail of the work intrusted to them. (Post, p. 396.)

Citing: Gamble v. Vanderbilt University, 138 Tenn. (11 Thomp.), 616; Hale v. Johnston, 140 Tenn. (13 Thomp.), 182.

4. PUBLIC OFFICERS. COUNTY COMMISSIONERS. COUNTY ENGINEER. NEGLIGENCE. LIABILITY.

Where it appears that three commissioners, one of whom had charge of county finance and purchasing and bridges; another had charge of the workhouse and roads; and the third had charge of institutions, it would not be possible for one of these commissioners to personally look after every detail of the work even in his own department, and if, after investigating the qualifications, they employed a county engineer and placed him in charge of the bridge work of the county, the commissioners would not be liable for damages resulting from an accident on account of an unprotected bridge site which had been torn down in highway construction. (Post, p. 399.)

5. PUBLIC OFFICERS. COUNTY COMMISSIONERS. BRIDGES. PUBLIC WORKS.

The determination and order of the county commissioners that certain bridges be torn out and replaced cannot be regarded as setting in motion a dangerous agency so as to render them liable in damages. (Post, p. 402.)

6. NEGLIGENCE. BARRIER ON HIGHWAY. QUESTION FOR JURY.

Whether or not a barrier placed a mile or so South of a point where the highway was under construction was sufficient to give warning to the traveling public was a question properly left to the jury. (Post, p. 403.)

---

*Headnotes 1. Officers, 29 Cyc., p. 1442; 2. Counties, 15 C. J., section 192 (Anno.); 3. Bridges, 9 C. J., section 110; 4. Bridges, 9 C. J., section 69; 5. Bridges, 9 C. J., section 69; 6. Bridges, 9 C. J., section 69; 7. Bridges, 9 C. J., section 69; 8. Bridges, 9 C. J., section 69; 9. Bridges, 9 C. J., section 110.

---

FROM SHELBY.

Appeal from Circuit Court of Shelby County.—HON. A. B. PITTMAN, Judge.

W. D. KYSER, for complainant.

LOIS D. BEJACH, for defendant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

While driving in an automobile on a public road through Nonconnah bottom in Shelby County, between four-thirty A. M. and five A. M. September 11, 1924, the car ran into an open slough from which a bridge had been removed, and plaintiff in error sustained severe injuries. There was no barrier at the slough or anything to warn travelers of the chasm at the time of the accident. The plaintiff in error brought a suit against Shelby County, E. W. Hale, W. J. Bacon, and Luther Jones, Commissioners of Shelby County, A. M. Nelson, Shelby County Engineer, and Thomas Dean, a contractor, who had been employed by the county in connection with the work of removing the bridge.

A declaration was filed to which the defendants demurred. The demurrer was sustained by the trial court but this action was disapproved by the Court of Civil Appeals in so far as the Commissioners, the Engineer and the Contractor were concerned and the case remanded for trial as to the last named parties. The Court of Civil Appeals affirmed the judgment of the trial court in so far as it dismissed the suit against Shelby County. The case came before this Court upon petition for *certiorari* granted and this Court affirmed the judgment of the Court of Civil Appeals in all respects. *Vance v. Shelby County,* 152 Tenn., 141.

Upon the remand pleas were filed by the individual defendants and a lengthy hearing of the case was had before the Court and jury. The trial judge finally concluded that the case was not a proper one to go to the jury and dismissed the suit as to all the defendants. No exception was taken to his action in so far as he dismissed the suit against the contractor Dean. An appeal in error, however, was taken to the Court of Appeals calling in question the judgment of the trial court dismissing the suit as to the County Commissioners and the County Engineer.

The Court of Appeals was of opinion that the Court below erred in dismissing the suit, as on peremptory instructions, against the Commissioners and the Engineer, and remanded the case for another trial. This Court has again granted the writ of *certiorari* herein and the controversy has again been presented to us.

On the former hearing we had before us only the declaration and the demurrer. The declaration charged that this was a road much traveled and that the defendants, "without any warning or notice to those who had been invited to use said road and bridge, did unlawfully, willfully, and wrongfully cause said bridge to be burned and torn out, leaving said road at the point where said bridge was located an open chasm from twelve to fifteen feet deep and from thirty to fifty feet wide; that this chasm or opening so left by defendants in said road constituted a dangerous pitfall, snare, deathtrap and nuisance, which was likely to injure persons traveling said road, which fact was known to defendants, or should have been known to them; that, notwithstanding defendants had unlawfully, willfully, and wrongfully created and caused this dangerous pitfall and nuisance in said road, they failed to erect or cause to be erected and main-

tained any barriers or other obstructions to protect travelers using said road; and failed to maintain lights or other warnings at said place, notifying persons who might use said road of its dangerous condition, on account of which plaintiff, while in the lawful use of said road, and wholly without knowledge of said pitfall, snare, or nuisance, and in the nighttime, drove his automobile into said chasm or opening, on account of which he sustained serious and permanent injuries, from which he suffered great physical pain and mental anguish, and for which he sues.''

The Court said that the failure of the officers and employees of the County who, it was alleged, destroyed or removed the bridge from the road in question, to erect barriers or place lights or other warnings at the place where said bridge was removed for the protection of travelers amounted to negligence.

Speaking further, through Mr. Justice HALL, the Court said:

''We are of the opinion that the defendant officers and employees owed the plaintiff and others who might travel said road or highway the duty of warning them against said dangerous chasm or pitfall left in said road by the removal of said bridge and a failure to do so amounted to misfeasance, for which they would be liable, taking the averments of the declaration as true.'' *Vance* v. *Shelby County, supra.*

(1) It was not intended by the Court in this case to say that the defendant County Officers were to be held as guarantors or insurers of the placing or erection of proper barriers or warnings at this chasm for the benefit of the public. It was said that such officers owed a duty to the public of warning them against the danger, but the Court only intended to hold that the County Offi-

cers were required to use ordinary care to perform such duty and that they would be personally liable for negligence in failing to discharge this duty, or of course for willful failure.

*Vance* v. *Shelby County, supra,* followed *Hale* v. *Johnston,* 140 Tenn., 182, and *Gamble* v. *Vanderbiltt University,* 138 Tenn., 616.

In *Hale* v. *Johnston, supra,* suit was brought against the County Commissioners by the representative of a Shelby County convict who was beaten to death by guards and overseers. Proof was introduced tending to show that cruelties and barbarities with reference to the County prisoners at the Workhouse were notorious and were the subject of general discussion by the public. The Commissioners were under a statutory duty to see that the County prisoners were "kindly and humanely treated." The Court held that it was incumbent upon the Commissioners to have exercised ordinary care to see that plaintiffs intestate was kindly and humanely treated and, even if defendants did not know that corporal punishment was constantly practiced in the Workhouse in the most brutal ways, it was for the jury to say whether, in view of the notoriety of the practice, the Commissioners should have discovered it in the exercise of ordinary care in the discharge of their duties.

In *Gamble* v. *Vanderbilt University, supra,* certain trustees of that institution were held personally liable for permitting the use of an elevator in an office building which elevator they knew to be in a dangerous condition. According to the averments of the declaration in this case the conduct of the trustees was rather more than negligence. There was an element of willfulness in it.

In the later case of *Board of Education* v. *Ray*, 154 Tenn., 179, it was held that the individual members of the Board of Education of Johnson City might be liable for negligently or knowingly failing to perform a duty imposed upon them, but there was nothing in the record to show the omission of any such duty on their part and the suit was dismissed.

(2) In *Johnston* v. *Hamilton County, et al.*, decided December 17, 1927, a declaration was held to state a good cause of action against the Superintendent of the County Hospital which charged that said Superintendent did "knowingly, carelessly, negligently, and willfully," permit an insane patient to be placed in a room containing razor blades with which he might injure himself.

We think it thus obvious from our cases that in order to hold a public officer liable, as for misfeasance in the omission of a duty placed upon him, it must appear that such officer knowingly or negligently failed to perform said duty, or if the performance thereof was committed to a subordinate, that such officer did not exercise ordinary care to see that performance was duly accomplished.

The declaration in this case, as above quoted, charged that the defendants "failed to erect or cause to be erected and maintained any barriers, etc.," to protect travelers using this road. The County Officers were under the duty of erecting such barriers or causing them to be erected for the protection of the public. If they failed to use ordinary care about the erection of such barriers or in causing such barriers to be erected, the County Officers failed in the exercise of a duty placed upon them by law and liability followed. It was accordingly held that the declaration herein stated a good cause of action. This is the extent of the former opinion of this Court in this case.

*(3)* For negligence of their subordinate employees in the erection of barriers or placing warning signs about this slough the County Officers would not be liable under the rule of *respondeat superior,* for the subordinates were the employees of the County not of the County Officers. That is to say, if the County Officers had exercised ordinary care in the selection of the subordinate employees, had given them proper instructions and supervision, and had no reason to question the reliability of said employees, the County Officers could not be held to answer for negligence of such employees in a detail of the work intrusted to them. The law is thus declared both in *Gamble* v. *Vanderbilt University, supra,* and *Hale* v. *Johnston, supra.*

In *Gamble* v. *Vanderbilt University,* the trustees knew that the elevator was in a dangerous condition. In *Hale* v. *Johnston,* the cruelties practiced by the Workhouse employees upon the convicts had become so notorious that it was left to the jury to say whether the Commissioners, in the exercise of ordinary care in the discharge of their duties, should have known of such practices.

It was not intended in any of our cases to declare that a public officer charged with the supervision of large public works should personally attend to every detail of such works. This is an impossibility. If a public officer exercises ordinary care in the choice of subordinate employees in the public service, and if such officer properly instructs these employees and exercises ordinary care to see that the employees properly perform their duties, we think that such public officer has thereby discharged the obligation placed upon him by law.

Having attempted this enucleation of our decisions we come now to apply the principles stated to the facts of this case.

Defendants, E. W. Hale, William J. Bacon, and Luther Jones, are Commissioners of Shelby County, the business affairs of that County having been placed in the hands of a Commission by Chapter 237 of the Acts of 1911. The defendant A. M. Nelson is the Engineer of Shelby County, having been employed by the Commissioners, and having immediate supervision of all road and bridge work in said County.

Upon recommendation of Nelson it was determined by the Commissioners to reconstruct the road and bridges in Nonconnah bottom. There had been a bridge over Nonconnah creek, and a bridge over a slough north of the creek, and another bridge over a slough south of the creek. The plan adopted was to fill in both sloughs and rebuild the bridge over the creek.

This accident happened at the south slough early in the morning on Thursday, September 11, 1924. On Monday some work was done about tearing out the bridge over the south slough. Some of the timbers were taken out and others burned in place. By Wednesday the bridge had been largely destroyed and a chasm left where the bridge had been.

Witnesses for the defendants below testified that when these timbers were removed from the bridge a barrier was made of such timbers, at right angles within the road, and extending entirely across the road about three feet high. It was testified that this barrier was something like twenty feet south of the chasm and that it would have been impossible for an automobile to have gone over such barrier.

Proof was introduced by the plaintiff below tending to show that no such barrier was placed across the road at the south slough. Some of plaintiff's witnesses tes-

tified that they were at this point on the day before the accident late in the afternoon and saw no such barrier.

Defendant Nelson, the County Engineer, stated that he visited this work after six o'clock on the evening of September 10th, the day before the accident, and remained there until six-thirty. Nelson said that at this time the barrier heretofore described was across the road about twenty feet south of the slough, about three feet high and was of such a character that no automobile or vehicle could pass over it. Nelson's wife accompanied him on this trip and testified to the same state of facts, and there is like testimony from another witness or two.

It is perfectly certain, however, that there was no barrier at this point on the next morning, September 11, 1924, between four-thirty and five o'clock. At this time the plaintiff below in company with another gentleman, the latter driving the car, came along the road and encountered no obstruction whatever and their car plunged into the south slough. The absence of any barrier at this time is demonstrated by the marks along the road due to the skidding of the car in which plaintiff was riding. The exact length of these skid marks is a matter of controversy on the record, but all the witnesses show that they extended south of the slough as much as twenty feet. Moreover, it would have been physically impossible for an automobile to have surmounted such a barrier as the defendants witnesses state had been built at this point.

It seems to be the custom in Shelby County when an old bridge is destroyed, to give such timbers as will not be used in further construction to people in the neighborhood who wish them. Such practice was followed in this particular work and there had been considerable hauling away of the old lumber while these bridges were being torn out on the days before the accident. It is

suggested by the defendants counsel that the barrier said to have been erected against the south slough was removed during the night of September 10, 1924, by some neighbors. This is merely a suggestion. Some of the men working about this job were camped in the bottom seventy-five yards or so from the intersection of the road with the south slough, and one of these men says there was some hauling around in the bottom during the night, but he says that he did not hear any body removing this particular barrier. These men in camp, however, all seem to have retired about eight o'clock and their testimony amounts to little one way or the other.

In view of the plaintiffs proof that no barrier ever was erected at the south slough, in view of the fact that there was certainly no barrier there in the early morning of September 11, 1924, and in view of the improbability of people coming on this road and hauling off the lumber composing the barrier after six-thirty at night, we think that the actual existence of the barrier at the point in question on the evening of September 10, 1924, is a matter of controversy on this record. It was a matter to be determined by the jury. If no such barrier existed and if defendant Nelson, the County Engineer, was at this place as late as six-thirty on the evening before the accident and saw the situation and took no steps to have a barrier built or something else done for the protection of the public, so far as he is concerned, it would be a case of misfeasance and he would be liable to the plaintiff. We are satisfied, therefore, that the Court of Appeals properly held, in so far as Nelson is involved, that this case should have gone to the jury.

(4) We cannot, however, agree with the Court of Appeals as to the liability of the County Commissioners on the evidence brought up. As the Commission was

organized Hale had charge of the County finance and purchasing and the bridges, Jones had charge of the workhouse and roads, and Bacon had charge of the institutions. It would not be possible for one of these Commissioners to personally look after every detail of the work even of his own department. It was necessary in the conduct of the large affairs of Shelby County for this Commission to employ subordinates and intrust such employees with authority.

After investigation of his qualifications the Commissioners employed Nelson as County Engineer and placed him in charge of road and bridge work in the County. Nelson was an Engineer of experience, had been employed by the Highway Department of the State and in other important positions. He appears to be a man of ability in his line and during his employment by Shelby County the Commissioners had no complaint as to his work and had full confidence in him.

The testimony of the Commissioners is that they gave instructions to Nelson and all concerned to take the proper steps for the protection of the public whenever any dangerous spot was left on a highway as by tearing out a bridge or otherwise. Nelson says that he repeated these instructions to the foreman of laborers and others immediately doing such work and bringing about such situations, and that he undertook to see that these instructions were carried out in so far as he could.

The charges of negligence against these Commissioners are that none of them personally visited this Nonconnah work except Jones and that Jones came only one time, and that none of them took any steps to personally see that barriers were erected or other warning displayed to keep the public out of the pits made by the removal of these bridges in Nonconnah bottom. We do not think

it was incumbent on these Commissioners to check up every step in the progress of this job. They had issued timely instructions, had employed a capable Engineer and put him in charge and in the absence of some knowledge on the part of the Commissioners that the public was not being protected by the erection of suitable barriers or warning signals at the open sloughs, personal investigation on this account was not required. The Commissioners could not reasonably anticipate that an Engineer of Nelson's experience would fail to have taken such common precautions as this. There was no notorious neglect of duty by subordinate employees, such as appeared in *Hale* v. *Johnston, supra,* which the Commissioners in the exercise of ordinary care in the discharge of their duties should have known.

It is again suggested, although rather faintly, that the practice of the neighbors in removing timbers taken from destroyed bridges was so well known that it might have been expected that any barrier erected of such timbers would be carried away; that the Commissioners in the exercise of ordinary care should have appreciated this situation and taken steps to see that more effectual barriers than these lumber piles were used for the protection of the public. We do not think that the record discloses any such notorious condition of affairs. There is proof that the neighbors scrambled for this old lumber and Nelson said they would steel his lanterns and sometimes tear down his barriers. Hauling off the barriers, however, does not seem to have been a common thing nor to have been a matter of general complaint of which the Commissioners in the exercise of ordinary care would have heard. There is very little proof about any barrier being interfered with by the neighbors. If this was known to Nelson and he continued to erect barriers like-

ly to be removed, he might be chargeable with negligence on this account, but until such a practice became notorious, we do not think the Commissioners were called upon to interfere about the particular kind of warning or obstruction adopted by their Engineer for the protection of the public.

The duty which the Court in *Hale* v. *Johnston, supra,* said the Commissioners could not cast off by willful neglect, "or by delegation of their duties to others," was the duty to see that the prisoners were kindly and humanely treated, etc. In the previous paragraph of the opinion in that case it was said the Commissioners owed an active duty to the public and to the prisoners "to see that the statutory mandate was carried out." The Court did not mean by this expression to declare that the Commissioners were under a personal duty to care for the prisoners, that they could not intrust the care of the prisoners to other proper persons, but merely that the Commissioners must be diligent to see that those put in charge of the prisoners did treat them kindly and humanely, and that putting the prisoners in charge of others did not relieve the Commissioners of careful supervision of the treatment of prisoners by such employees. So in the case before us, the duty of the Commissioners, having selected a competent Engineer, was to exercise ordinary care to see that this Engineer duly performed his duties and took proper precautions for the protection of the public. We do not see that the Commissioners have failed in this respect. So far as the record discloses, this is the first accident at an unprotected bridge site torn down in highway construction in Shelby County.

(5) We do not think that the determination and order of the Commissioners that these bridges be torn

out and replaced can be regarded as setting in motion a dangerous agency, such as the use of the defective elevator in *Gamble* v. *Vanderbilt University, supra.* This work would not have involved danger to the public if barriers or warning signals had been placed on the highway when the bridges were torn out. It was the intention of the Commissioners that the public should be so safe guarded. Any omission in this respect was due to negligence of the employees, which negligence the Commissioners had no reason to expect.

(6) Whether or not the half-barrier placed a mile or so south of the work was sufficient to give any warning to the traveling public was a question properly left to the jury.

The judgment of the Court of Appeals in so far as this cause was remanded for trial against Nelson is affirmed. In so far as the Commissioners are concerned the judgment of the Court of Appeals is reversed, and the judgment of the Circuit Court is affirmed and this suit is dismissed as to them.